Shane R. Swindle (#011738)
Barry G. Stratford (#029923)
**PERKINS COIE LLP**
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone: 602.351.8000
Facsimile: 602.648.7000
SSwindle@perkinscoie.com
BStratford@perkinscoie.com
DocketPHX@perkinscoie.com

*Attorneys for Defendants Ganymede Investments*
*Limited and Burford Capital Limited*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Epicenter Loss Recovery, L.L.C., | No. 2:18-cv-03300-DJH |
| Plaintiff, | |
| vs. | **DEFENDANTS' RULE 12(b)(1) MOTION TO COMPEL ARBITRATION PURSUANT TO THE FEDERAL ARBITRATION ACT, AND TO DISMISS OR STAY THIS LITIGATION** |
| Burford Capital Ltd., and Ganymede Investments Ltd., | |
| Defendants. | |
| | (Oral Argument Requested) |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................. 1

FACTUAL BACKGROUND ................................................................. 2

ARGUMENT ......................................................................................... 5

    I.      PLAINTIFF'S CLAIMS AGAINST GANYMEDE MUST BE
           ARBITRATED ............................................................................. 5

         A.     The arbitration agreements fall within Chapter 2 of the FAA
              and are valid and enforceable ............................................. 5

         B.     ELR is bound by the terms of the arbitration agreements .................. 6

         C.     Plaintiff's claims fall within the scope of the arbitration
              agreements ............................................................................ 6

              1.     Claims arising out of or in connection with the FPA ............. 7

              2.     Claims arising out of or in connection with the Note ............ 7

         D.     The parties delegated questions regarding the scope of the
              arbitration to the arbitrators ............................................... 10

    II.     PLAINTIFF'S CLAIMS AGAINST BCL ALSO MUST BE
           REFERRED TO ARBITRATION AND DISMISSED OR STAYED ....... 11

         A.     Section 3 requires dismissal or a stay of plaintiff's claims
              against BCL ......................................................................... 11

         B.     BCL has the right to enforce the arbitration agreements ................. 12

              1.     Close relationship between signatory and non-signatory ..... 13

               2.     Plaintiff's claims against BCL are "intertwined" with
                   plaintiff's contracts with Ganymede ................................... 14

    III.    ALTERNATIVELY, THE COURT SHOULD EXERCISE ITS
           DISCRETION UNDER SECTION 3 OF THE FAA TO STAY
           FURTHER PROCEEDINGS ....................................................... 15

CONCLUSION ................................................................................. 17

**TABLE OF AUTHORITIES**

**Page**

Cases

*Aggarao v. MOL Ship Mgmt. Co., Ltd.*,
   675 F.3d 355 (4th Cir. 2012) .................................................................... 13

*Airtourist Holdings LLC v. HNA Grp.*,
   No. C 17-04989 JSW, 2018 WL 3069444 (N.D. Cal. Mar. 27, 2018) ....................... 14

*Alghanim v. Alghanim*,
   828 F. Supp. 2d 636 (S.D.N.Y. 2011) ........................................................... 16

*Arnold v. Arnold Corp.-Printed Commc'ns For Business*,
   920 F.2d 1269 (6th Cir. 1990) ................................................................... 11

*Arthur Andersen LLP v. Carlisle*,
   556 U.S. 624 (2009) ................................................................................ 12

*Astra Oil Co. v. Rover Navigation, Ltd.*,
   344 F.3d 276 (2d Cir. 2003).................................................................... 13

*Balen v. Holland Am. Line Inc.*,
   583 F.3d 647 (9th Cir. 2009) .............................................................. 2, 5, 6

*Bischoff v. DirecTV, Inc.*,
   180 F. Supp. 2d 1097 (C.D. Cal. 2002) ........................................................ 16

*Bonner v. Michigan Logistics Inc.*,
   250 F. Supp. 3d 388 (D. Ariz. 2017) ........................................................... 13

*C & S Corp. v. BAE Sys. Controls, Inc.*,
   No. CV 12-00366 DDP, 2012 WL 1205695 (C.D. Cal. Apr. 11, 2012) ...................... 7

*CD Partners, LLC v. Grizzle*,
   424 F.3d 795 (8th Cir. 2005) ............................................................. 12, 13

*China Nat'l Metal Prods. Imp./Exp. Co. v. Apex Digital, Inc.*,
   155 F. Supp. 2d 1174 (C.D. Cal. 2001) ................................................. 1, 16

*Comedy Club, Inc. v. Improv W. Assocs.*,
   553 F.3d 1277 (9th Cir. 2009) .................................................................. 6

*Coup v. Scottsdale Plaza Resort, LLC*,
   823 F. Supp. 2d 931 (D. Ariz. 2011) ........................................................... 1

*DaPuzzo v. Globalvest Mgmt. Co., L.P.,*
263 F. Supp. 2d 714 (S.D.N.Y. 2003) ................................................... 11, 15

*DiMercurio v. Sphere Drake Ins., PLC,*
202 F.3d 71 (1st Cir. 2000) ....................................................................... 6

*Edwards v. Nutrition,*
No. CV-17-02133-PHX-DGC, 2018 WL 637382 (D. Ariz. Jan. 31,
2018) ............................................................................................................. 8

*Escobal v. Celebration Cruise Operator, Inc.,*
482 F. App'x 475 (11th Cir. 2012) .............................................................. 15

*Gilbert v. Hartford-Comprehensive Emp. Benefit Serv. Co.,*
No. 1 CA-CV 10-0292, 2011 WL 553285(Ariz. Ct. App. Feb. 17, 2011) ................. 16

*Harvey v. Joyce,*
199 F.3d 790 (5th Cir. 2000) ...................................................................... 16

*Howsam v. Dean Witter Reynolds, Inc.,*
537 U.S. 79 (2002) ....................................................................................... 10

*Hughes Masonry Co. v. Greater Clark Cty. Sch. Bldg. Corp.,*
659 F.2d 836 (7th Cir. 1981) ...................................................................... 15

*In re Henson,*
869 F.3d 1052 (9th Cir. 2017) .................................................................... 12

*Innospec Ltd. v. Ethyl Corp.,*
No. 3:14-cv-158-JAG, 2014 WL 5460413 (E.D. Va. Oct. 27, 2014) ................. 10

*J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, SA,*
863 F.2d 315 (4th Cir. 1988) ...................................................................... 14

*Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA)
Inc.,*
560 F.3d 935 (9th Cir. 2009) ...................................................................... 11

*Martin Marietta Aluminum, Inc. v. Gen. Elec. Co.,*
586 F.2d 143 (9th Cir. 1978) ...................................................................... 12

*Ministry of Def. of the Islamic Republic of Iran v. Gould, Inc.,*
969 F.2d 764 (9th Cir. 1992) ........................................................................ 5

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) ........................................................................................... 1

*Mundi v. Union Sec. Life Ins. Co.*,
   555 F.3d 1042 (9th Cir.2009) ........................................................................... 13

*Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*,
   362 F.3d 1288 (10th Cir. 2004) .......................................................................... 9

*Neal v. Hardee's Food Sys., Inc.*,
   918 F.2d 34 (5th Cir. 1990) ................................................................................ 9

*Newton v. Neumann Caribbean Int'l, Ltd.*,
   750 F.2d 1422 (9th Cir. 1985) .......................................................................... 16

*Norton v. Phonejockey LLC*,
   No. 1 CA-CV 15-0186, 2016 WL 5939723 (Ariz. Ct. App. Oct. 13,
   2016) .................................................................................................................. 16

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
   724 F.3d 1069 (9th Cir. 2013) .......................................................................... 10

*Outokumpu Stainless USA, LLC v. Converteam SAS*,
   No. 17-10944, 2018 WL 4122807 (11th Cir. Aug. 30, 2018) ........................... 12

*PC Onsite, LLC v. Massage En V, LLC*,
   No. 1 CA-CV 10-0879, 2011 WL 6810919 (Ariz. Ct. App. Dec. 27,
   2011) .................................................................................................................... 6

*PPG Indus., Inc. v. Pilkington plc*,
   825 F. Supp. 1465 (D. Ariz. 1993) .................................................................... 12

*Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*,
   862 F.3d 981, 985 (9th Cir. 2017) .................................................................... 10

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
   388 U.S. 395 (1967) ............................................................................................ 7

*Prograph Int'l Inc. v. Barhydt*,
   928 F. Supp. 983 (N.D. Cal. 1996) ................................................................... 14

*Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*,
   991 F.2d 42 (2d Cir. 1993) .................................................................................. 8

*Republic of Nicar. v. Standard Fruit Co.*,
    937 F.2d 469 (9th Cir. 1991) ....................................................... 7

*Robbins Co. v. JCM Northlink LLC*,
    No. C16-646RSL, 2016 WL 4193864 (W.D. Wash. Aug. 9, 2016)............ 7

*Roderick v. Mazzetti & Assocs., Inc.*,
    No. C 04-2436 MHP, 2005 WL 3797122 (N.D. Cal. Oct. 27, 2005).......... 16

*Sam Reisfeld & Son Import Co. v. S.A. Eteco*,
    530 F.2d 679, 681 (5th Cir. 1976) .............................................. 14

*Schoenduve Corp. v. Lucent Techs., Inc.*,
    442 F.3d 727 (9th Cir. 2006) ..................................................... 7

*Shanferoke Coal & Supply Co. v. Westchester Serv. Corp.*,
    293 U.S. 449, 453 (1935)........................................................ 11

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999) ..................................................... 7

*Sinclair v. Servicemaster Co.*,
    No. CIV. 07-611 FCD/KJM, 2007 WL 3407138 (E.D. Cal. Nov. 14,
    2007) ............................................................................. 9

*Smith/Enron Cogeneration Ltd. P'ship, Inc. v.*
*Smith Cogeneration Int'l, Inc.*,
    198 F.3d 88 (2d Cir. 1999)....................................................... 15

*Sparling v. Hoffman Constr. Co.*,
    864 F.2d 635 (9th Cir. 1988) ............................................... 11, 15

*Standard Bent Glass Corp. v. Glassrobots Oy*,
    333 F.3d 440 (3d Cir. 2003)....................................................... 8

*Sun Valley Ranch 308 Ltd. P'ship ex rel. Englewood Props., Inc. v. Robson*,
    231 Ariz. 287, 294 P.3d 125 (Ct. App. 2012)............................ 12, 13, 14

*TA Robinson Equip. Co. v. JCB, Inc.*,
    No. 2 CA-CV 2011-0193, 2012 WL 1956785, (Ariz. Ct. App. May 31,
    2012) ............................................................................. 9

*Variblend Dual Dispensing Sys., LLC v. Seidel GmbH & Co., KG,*
970 F. Supp. 2d 157 (S.D.N.Y. 2013) ............................................................... 6

*Yang v. Majestic Blue Fisheries, LLC,*
876 F.3d 996 (9th Cir. 2017) ........................................................................... 12

**STATUTES**

9 U.S.C. § 3 ....................................................................................... 11, 15, 16

9 U.S.C. § 201 .................................................................................... 1, 5, 6

9 U.S.C. § 202 ........................................................................................ 1, 5

9 U.S.C. § 203 ........................................................................................... 1

9 U.S.C. § 204 ........................................................................................... 1

9 U.S.C. § 205 ........................................................................................ 1, 5

9 U.S.C. § 206 .................................................................................... 1, 5, 6

9 U.S.C. § 207 ........................................................................................... 1

9 U.S.C. § 208 ................................................................................... 1, 15, 16

28 U.S.C. § 1332 ....................................................................................... 5

**INTRODUCTION**

Epicenter Partners LLC and Gray, Meyer, Fannin LLC[1] entered into a series of litigation financing contracts with defendant Ganymede Investments Limited ("Ganymede"). In each contract, the parties agreed that "[a]ny dispute, controversy or claim arising out of or in connection with this Agreement shall (to the exclusion of any other forum) be referred to and finally resolved by arbitration under the Arbitration Rules of the London Court of International Arbitration ('LCIA')" in "London, England." Because the claims in plaintiff's Second Amended Complaint ("SAC") arise out of and are in connection with the parties' litigation financing contracts, they must be arbitrated.

The parties' agreements to submit disputes arising from or connected to those contracts to international arbitration fall squarely within both Chapter 1 and Chapter 2 of the Federal Arbitration Act ("FAA") and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), incorporated therein, which mandate enforcement of the parties' agreement to arbitrate any disputes.[2] Defendants therefore move pursuant to Rule 12(b)(1)[3] for an order dismissing plaintiff's claims against Ganymede and compelling arbitration of those claims in London, in accordance with the parties' agreement to arbitrate "any disputes" and Chapter 2 of the FAA. Any other result would directly contravene the parties' agreement and the "emphatic federal policy in favor of arbitral dispute resolution"—a policy that "applies with special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473

---

[1] Epicenter Partners LLC and Gray, Meyer, Fannin LLC brought this case initially but subsequently assigned their interests to Epicenter Loss Recovery LLC ("ELR"). [*See* Second Amended Complaint ("SAC") ¶¶ 1, 8-11; *infra* at 6] Epicenter, Gray, and ELR are referred to collectively as "plaintiff."

[2] The Convention is implemented by the FAA at 9 U.S.C. §§ 201–08.

[3] A Rule 12(b)(1) motion to dismiss is a proper vehicle to enforce an arbitration agreement. *See, e.g.*, *Coup v. Scottsdale Plaza Resort, LLC*, 823 F. Supp. 2d 931, 938 (D. Ariz. 2011); *China Nat'l Metal Prods. Imp./Exp. Co. v. Apex Digital, Inc.*, 155 F. Supp. 2d 1174, 1177-78 (C.D. Cal. 2001).

U.S. 614, 631 (1985); *accord Balen v. Holland Am. Line Inc*., 583 F.3d 647, 654 (9th Cir. 2009) (recognizing strong public policy favoring international arbitration).

Defendants also move, pursuant to Section 3 of the FAA, to dismiss or stay plaintiff's claims against defendant Burford Capital Limited ("BCL")—defendant Ganymede's ultimate parent. Although BCL was not a signatory to the arbitration agreements, it may nonetheless enforce the agreements under long-standing principles of estoppel because plaintiff's claims against Ganymede and BCL are indistinguishable—they are based on the same facts and are premised on the allegation that Ganymede was BCL's alter ego. Alternatively, because in all events the claims against Ganymede must be arbitrated, at a minimum the Court should stay plaintiff's claims against BCL pending completion of the arbitration with Ganymede because resolution of that dispute could make further proceedings in this Court unnecessary.

## FACTUAL BACKGROUND

Defendant Ganymede, a Guernsey corporation with its principal place of business in St. Peter Port, Guernsey, is in the business of litigation financing.[4] [Declaration of Mark Woodall (Doc. 1-5) ("Woodall Decl.") ¶ 3] Defendant BCL, a holding company and the ultimate parent of Ganymede, is also a Guernsey corporation and is publicly listed on the London Stock Exchange. [*Id.* ¶¶ 4-5] This lawsuit arises out of a series of contracts—litigation financing agreements called *Forward Purchase Agreements* ("FPA")—between defendant Ganymede and ELR's assignors, Epicenter Partners LLC and Gray, Meyer, Fannin LLC.

In 2009, plaintiff was involved in hard-fought litigation in Arizona regarding certain real estate rights. Looking for an alternative means to pay its legal fees in what had become expensive litigation, plaintiff entered into a litigation financing FPA dated December 22, 2009 with Ganymede, which agreement was expressly made and performed by Ganymede

---

[4] Guernsey is a British Crown Dependency and a major international financial center. More companies listed on the London Stock Exchange are incorporated in Guernsey than any jurisdiction other than England itself. *See* https://www.gifa.org.gg/statistics.

in Guernsey. [SAC ¶¶ 23-24] That FPA, and all subsequent amendments, supplements, and restatements of that agreement, required plaintiff and Ganymede to arbitrate in London, England "[a]ny dispute, controversy or claim arising out of or in connection with this Agreement . . . under the Arbitration Rules of the LCIA [London Court of International Arbitration]." [Woodall Decl., Ex. A (2009 FPA) § 21.2[5]; Ex. B (2010 FPA) § 21.2; Ex. C (2011 FPA) § 21.2] With the benefit of the financing provided by Ganymede, plaintiff was able to litigate its real estate case in Arizona to a successful conclusion and obtained a judgment of $110,658,800.00 plus interest. [SAC ¶ 35]

Plaintiff thereafter settled the real estate litigation by receiving substantial real estate but no cash. Subsequently, on April 22, 2013, Ganymede and plaintiff entered into a series of contemporaneous, integrated agreements to address plaintiff's obligations to Ganymede under the FPAs. The integrated set of agreements included a *Second Supplemental Agreement and Amendment Relating to Restated and Amended Forward Purchase Agreement* (amending and supplementing the 2011 FPA) ("2013 FPA"), a *Subordination and Intercreditor Agreement* ("Intercreditor Agreement" or "IA"), and a *Promissory Note* ("Note"), along with other related documents. [Ex. D (2013 FPA); Ex. E (IA); Ex. F (Note); *see* SAC ¶¶ 45-48]

Both the 2013 FPA and the Intercreditor Agreement included broad, matching arbitration clauses. Those clauses provided: (a) that "[a]ny dispute, controversy or claim arising out of or in connection with this Agreement shall (to the exclusion of any other forum) be referred to and finally resolved by arbitration under the Arbitration Rules of the London Court of International Arbitration ('LCIA')"; (b) that the "agreement to arbitrate, and any resulting award, falls under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, and section 202, and Chapter 2, of the Federal Arbitration Act"; and (c) that the "seat, or legal place, of arbitration shall be London, England, and all proceedings shall occur there." [Ex. D (2013 FPA) § 9.7; Ex. E (IA) § 17]

---

[5] All exhibit ("Ex.") citations reference the exhibits attached to the Declaration of Mark Woodall, Doc. 1-5.

The Note, which was contemporaneously executed with the Intercreditor Agreement, does not include an independent dispute resolution clause, but the Note and the rights and obligations in the Note are expressly "subject to" the Intercreditor Agreement, which includes the obligation to arbitrate all disputes. [Ex. F (Note) at 1; Ex. E (IA) § 17] Moreover, the maker of the Note (plaintiff) agreed to be "bound by the provisions of the" Intercreditor Agreement. [Ex. F (Note) at 1] Additionally, the Note was executed contemporaneous with and "pursuant to" the 2013 FPA, which also requires arbitration of all disputes. [*Id.* at 2; Ex. D (2013 FPA) § 6.1 ("[plaintiff's] payment obligations to [Ganymede] shall be evidenced and/or secured by . . . [a] Promissory Note")] The Note evidences on its face that it is part of the integrated financial transaction between the parties that occurred on April 22, 2013. [Ex. F (Note) at 1; *see also* Ex. D (2013 FPA) § 6.1 (listing the Note among many "Transaction Documents" governed by the 2011 FPA as amended and supplemented by the 2013 FPA on April 22, 2013)]

Notwithstanding these binding arbitration agreements, plaintiff filed this action in Maricopa County Superior Court. Plaintiff alleges claims for breach of the covenant of good faith implied into the Note and interference with business expectancy based on Ganymede exercising its rights to sell and assign the Note and related financing agreements (*see* SAC Counts II, III)—actions expressly authorized by the FPA and the Note. [*See, e.g.*, Ex. C (2011 FPA) § 20.1 (Ganymede "may assign its rights and obligations under this agreement without the express consent in writing of [plaintiff]"); Ex. D (2013 FPA) § 1.1 (incorporating 2011 FPA); Ex. E (Note) at 1 ("This Note . . . shall inure to the benefit of [Ganymede], and any subsequent holders of this Note, and their successors and assigns.")]

Plaintiff also named Ganymede's ultimate parent, BCL, as a defendant, based on a pro forma claim that Ganymede acted as BCL's alter ego and, so it is alleged, BCL was effectively a party to the Note. [SAC Count I] According to the SAC, plaintiff's claims against BCL arise out of and are wholly dependent on plaintiff's claims against Ganymede. Indeed, many of plaintiff's factual allegations are against "Defendants," collectively. [*See Id.* ¶¶ 26, 28-32, 34, 37-38, 41, 43-44, 46-47, 49-51, 53-74, 96-114]

On October 15, 2018, Defendants Ganymede and BCL removed plaintiff's complaint to this Court pursuant to 9 U.S.C. § 205 and 28 U.S.C. § 1332 for the purpose of enabling defendants to exercise their rights to dismiss or stay this litigation and compel arbitration under the FAA and the Convention.

## ARGUMENT

## I.  PLAINTIFF'S CLAIMS AGAINST GANYMEDE MUST BE ARBITRATED.

Chapter 2 of the FAA requires courts to compel arbitration of all claims within the scope of a valid and enforceable non-domestic arbitration agreement. 9 U.S.C. §§ 201, 202, 206. The arbitration agreements in the 2009 FPA, 2010 FPA, 2011 FPA, 2013 FPA and Intercreditor Agreement fall squarely within Chapter 2 of the FAA, are valid and enforceable, and encompass plaintiff's claims against Ganymede. Arbitration of plaintiff's claims against Ganymede in London pursuant to the rules of the LCIA is therefore required.

### A.  The arbitration agreements fall within Chapter 2 of the FAA and are valid and enforceable.

On their face, the arbitration agreements in the FPAs and Intercreditor Agreement fall within the Convention and Chapter 2 of the FAA because (1) the agreements require arbitration, are in writing, and are signed by plaintiff and Ganymede; (2) they require non-domestic arbitration in "the territory of a signatory of the Convention" (the United Kingdom); (3) they arise out of the "commercial relationship" between Ganymede and plaintiff; and (4) Ganymede is not a citizen of the United States. *See, e.g.*, *Balen*, 583 F.3d at 654-55 (citing 9 U.S.C. § 202 and same factors). Plaintiff and Ganymede unquestionably intended this result—they "expressly agree[d]" that their "agreement to arbitrate . . . falls under the [Convention] and section 202, and Chapter 2, of the Federal Arbitration Act." [Ex. D (2013 FPA) § 9.7; Ex. E (IA) § 17]

In accordance with Chapter 2 of the FAA and the strong federal policy favoring international arbitration, the Court therefore must dismiss and compel arbitration in London, England of all of plaintiff's claims against Ganymede pursuant to the Arbitration Rules of the LCIA. *See Ministry of Def. of the Islamic Republic of Iran v. Gould, Inc.*, 969 F.2d 764,

770 (9th Cir. 1992) (the word "shall" in 9 U.S.C. § 201 gives the court little discretion under the Convention); *Balen*, 583 F.3d at 654 (compelling arbitration in the Philippines pursuant to Section 206 of the FAA); 9 U.S.C. § 206 ("A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States.").

**B.      ELR is bound by the terms of the arbitration agreements.**

This lawsuit was brought by Epicenter Partners LLC and Gray, Meyer, Fannin LLC, the two signatories to the FPAs and Intercreditor Agreement with Ganymede. After filing their complaint, the plaintiff LLCs assigned their claims to ELR on September 10, 2018 and substituted ELR, in their place, as the plaintiff in the SAC. [SAC ¶¶ 1, 8-11].

The arbitration agreements are applicable to assignees (Ex. D (2013 FPA) § 9.5; Ex. E (IA) at § 10), and ELR is bound by its assignors' agreements to arbitrate. "If this were not the rule, arbitration clauses would be meaningless, as any party who wished to avoid them could simply assign its rights under the contract to another entity." *PC Onsite, LLC v. Massage En V, LLC*, No. 1 CA-CV 10-0879, 2011 WL 6810919, at *2 (Ariz. Ct. App. Dec. 27, 2011); *see also Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009) (arbitration clauses bind assignee); *DiMercurio v. Sphere Drake Ins., PLC*, 202 F.3d 71, 81 (1st Cir. 2000) (holding under the Convention that assignee was bound by arbitration provision); *Variblend Dual Dispensing Sys., LLC v. Seidel GmbH & Co., KG*, 970 F. Supp. 2d 157, 168-70 (S.D.N.Y. 2013) (recognizing "elementary ancient law that an assignee never stands in any better position than his assignor," and holding that plaintiff was "bound by" arbitration provision "notwithstanding its attempt to disclaim arbitration as an obligation . . . it did not assume from [assignor]") (citation omitted).

**C.      Plaintiff's claims fall within the scope of the arbitration agreements.**

The gravamen of plaintiff's claims in the SAC is that defendants wrongfully exercised their rights under the FPA, as amended, supplemented, and restated, and under the Note executed "pursuant to" the 2013 FPA and "subject to" the Intercreditor Agreement. Those claims necessarily "aris[e] out of" or are "in connection with" the FPAs and the

Intercreditor Agreement and are therefore subject to the parties' arbitration agreements.

### 1. Claims arising out of or in connection with the FPA.

The arbitration provision of the 2013 FPA (and all preceding versions of the FPA) requires the parties to arbitrate "[a]ny dispute, controversy or claim arising out of or in connection with this Agreement." [Ex. D (2013 FPA) § 9.7] Numerous courts in this Circuit have recognized that this precise language—"arising out of or in connection with"—sweeps broadly, encompassing all claims that touch on the parties' contractual relationship, including both contractual claims and non-contractual claims. *See, e.g.*, *Robbins Co. v. JCM Northlink LLC*, No. C16-646RSL, 2016 WL 4193864, at *5 (W.D. Wash. Aug. 9, 2016) (noting the provision "sweeps broadly" and covers the contractual, statutory, and equitable claims at issue); *C & S Corp. v. BAE Sys. Controls, Inc.*, No. CV 12-00366 DDP (AJWx), 2012 WL 1205695, at *1 (C.D. Cal. Apr. 11, 2012) (describing the provision as a "broad arbitration clause" that encompasses plaintiff's quasi-contractual and estoppel claims).

Here, the many allegations in the SAC expressly referring to the FPA demonstrate that plaintiff's claims, at a minimum, "aris[e] out of" or are "in connection with" the FPA, as amended, supplemented, and restated (*see, e.g.*, SAC ¶¶ 23-24, 33-34) and thus must be arbitrated. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) (concluding that "the language 'arising in connection with' reaches . . . all disputes having their origin or genesis in the contract"); *see also, e.g.*, *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398, 406 (1967) (holding that "[a]ny controversy or claim arising out of or relating to this Agreement" was "easily broad enough to encompass [plaintiff's] claim" for "fraud"); *Schoenduve Corp. v. Lucent Techs., Inc.*, 442 F.3d 727, 732 (9th Cir. 2006) (holding that the phrase "'if a dispute arises out of or relates to this Agreement,' was broad enough to include a claim . . . based on quasi-contract or estoppel"); *cf. Republic of Nicar. v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991) ("[T]he most minimal indication of the parties' intent to arbitrate must be given full effect . . . in international disputes.").

### 2. Claims arising out of or in connection with the Note.

Plaintiff also alleges that its claims arise out of the Note, which was subject to the

Intercreditor Agreement and pursuant to the 2013 FPA. [SAC ¶¶ 45, 51-74, 96-114] Those claims are equally subject to arbitration for two reasons.

First, the obligation in the Intercreditor Agreement to arbitrate "[a]ny dispute, controversy or claim arising out of or in connection with this Agreement" (Ex. E (IA) § 17) is expressly incorporated into the Note and, therefore, requires arbitration of all claims arising out of or in connection with the Note. The header to the Note provides, in bolded text: **"This instrument and the rights and obligations evidenced hereby are subject to that certain Subordination and Intercreditor Agreement . . . dated as of April 22, 2013[.]"** [Ex. F (Note) at 1 (emphasis in original)] Because the Note is "subject to" the Intercreditor Agreement, it incorporates and is "subject to" the arbitration provision in the Intercreditor Agreement. *See Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46-49 (2d Cir. 1993) (incorporating arbitration clause where agreement without clause is "subject to" agreement with arbitration clause); *see also Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447-50 (3d Cir. 2003) (holding that arbitration clause was incorporated by reference and affirming motion to compel under the Convention); *Edwards v. Nutrition*, No. CV-17-02133-PHX-DGC, 2018 WL 637382, at *4 (D. Ariz. Jan. 31, 2018) (finding that plaintiff agreed to arbitration by assenting to an agreement that incorporated by reference procedures that included arbitration).

Second, even if the arbitration agreement in the Intercreditor Agreement were not expressly incorporated into the Note, plaintiff's claims fall within the broad scope of the arbitration provisions in both the Intercreditor Agreement and the 2013 FPA. The Note was executed as part of an integrated transaction contemporaneously with, and as an inducement for Ganymede to enter into, both the Intercreditor Agreement and the 2013 FPA. The integrated nature of transaction is evident on the face of the documents: the 2013 FPA required that plaintiff's "payment obligations to [Ganymede] shall be evidenced and/or secured by . . . [a] Promissory Note"; the Note states that it was issued "pursuant to" the 2013 FPA, and that it is "subject to" the Intercreditor Agreement; and the whole package was executed simultaneously as part of one integrated transaction. [*See* Ex. D (2013 FPA)

§ 6.1 (listing the Note among many "Transaction Documents" governed by the 2011 FPA as amended by the 2013 FPA); Ex. F (Note) at 1-2]

The arbitration clauses in those integrated agreements are unquestionably broad enough to cover claims arising out of or in connection with the Note. *See Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1292 (10th Cir. 2004) ("any dispute" language reached dispute arising under contract without an arbitration provision where both contracts were "more than related; they are dependent on each other"); *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990) (compelling arbitration where two "individual agreements were integral and interrelated parts of the one deal," signed by the same parties, and executed contemporaneously); *Sinclair v. Servicemaster Co.*, No. CIV. 07-611 FCD/KJM, 2007 WL 3407138, at *6 (E.D. Cal. Nov. 14, 2007) (absence of arbitration clause in one agreement was "of no consequence" because plaintiff's claim "touches matters" covered by another agreement containing an arbitration clause, and both agreements were "necessarily intertwined"); *TA Robinson Equip. Co. v. JCB, Inc.*, No. 2 CA-CV 2011-0193, 2012 WL 1956785, at *3 (Ariz. Ct. App. May 31, 2012) ("Tort claims can be characterized as arising out of or related to the contract.") (citation omitted).

Indeed, it would be impossible to determine liability under the Note without determining the rights and obligations of the parties under the FPA and Intercreditor Agreement. The gravamen of plaintiff's claims is that defendants somehow breached the covenant of good faith implied in the Note and interfered with plaintiff's business expectations by selling and assigning the FPA and the Note. But the FPA expressly states that Ganymede "may assign its rights and obligations under this agreement without the express consent in writing of [plaintiff]," and the Note states that it "shall inure to the benefit of [Ganymede], and any subsequent holders of this Note, and their successors and assigns" and is subject to the Intercreditor Agreement. [*See, e.g.*, Ex. C (2011 FPA) § 20.1; Ex. D (2013 FPA) § 1.1 (incorporating 2011 FPA); Ex. E (Note) at 1] Because the rights and obligations of the parties under the FPA and the Intercreditor Agreement are unquestionably

within the scope of the arbitration agreements, all disputes, including disputes concerning the Note, must be arbitrated.

**D.** **The parties delegated questions regarding the scope of the arbitration to the arbitrators.**

Finally, even if there were a question as to whether plaintiff's claims fall within the broad scope of the arbitration agreements, the parties expressly delegated that question to the arbitrators. "[P]arties may delegate the adjudication of gateway issues to the arbitrator if they 'clearly and unmistakably' agree to do so." *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017) (quoting *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83-84 (2002)).

The parties to the arbitration agreements here expressly incorporated the "Arbitration Rules" of the LCIA. [*See* Ex. D (2013 FPA) § 9.7; Ex. E (IA) § 17] Article 23.1 of the LCIA Rules provides that "[t]he Arbitral Tribunal shall have the power to rule upon its own jurisdiction and authority, including any objection to the initial or continuing existence, validity, effectiveness or scope of the Arbitration Agreement." Incorporation of the LCIA Rules is "clear and unmistakable evidence that the parties agreed the arbitrator would decide arbitrability." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074-75 (9th Cir. 2013) ("We hold that as long as an arbitration agreement is between sophisticated parties to commercial contracts, those parties shall be expected to understand that incorporation of the UNCITRAL rules delegates questions of arbitrability to the arbitrator.");[6] *Portland Gen. Elec. Co.*, 862 F.3d at 985 (incorporation of ICC rules is clear and unmistakable evidence of intent to delegate gateway issues to arbitrator); *see also Innospec Ltd. v. Ethyl Corp.*, No. 3:14-cv-158-JAG, 2014 WL 5460413, at *3-4 (E.D. Va. Oct. 27, 2014) ("[T]he LCIA Rules clearly and unmistakably allow the arbitrator to determine his own jurisdiction, and the parties clearly and unmistakably agreed to arbitration under the LCIA Rules.").

---

[6] The UNCITRAL and LCIA rules are functionally identical. *Compare* LCIA Rule art. 23.1 (quoted above in text), *with* UNCITRAL Arbitration Rules art. 21, para. 1, G.A. Res. 31/98, U.N. Doc. A/RES/31/98 (Dec. 15, 1976) ("The arbitral tribunal shall have the power to rule on objections that it has no jurisdiction").

Thus, pursuant to the parties' express agreement incorporating the LCIA Rules, even if there were questions as to whether plaintiff's claims fall within the parties' arbitration agreements, those questions must be referred to the arbitrators for decision.

## II. PLAINTIFF'S CLAIMS AGAINST BCL ALSO MUST BE REFERRED TO ARBITRATION AND DISMISSED OR STAYED.

The preceding analysis applies equally to plaintiff's identical claims against BCL—Ganymede's ultimate parent. Although BCL is not a signatory to the arbitration agreements, under long-standing principles of estoppel, plaintiff may not avoid arbitration through the subterfuge of adding identical claims against a non-signatory parent company. Otherwise, "the effect of the rule requiring arbitration would, in effect, be nullified." *Arnold v. Arnold Corp.-Printed Commc'ns For Business*, 920 F.2d 1269, 1281-82 (6th Cir. 1990). Pursuant to Section 3 of the FAA, the Court should therefore also refer plaintiff's claims against BCL to arbitration and dismiss or "stay the trial of the action until such arbitration has been" completed. 9 U.S.C. § 3.

### A. Section 3 requires dismissal or a stay of plaintiff's claims against BCL.

By its terms, Section 3 of FAA Chapter 1 applies in every case "brought in any of the courts of the United States" with claims "referable to arbitration." *Id*. In all such cases, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *Id*. "If the court finds that an arbitration clause is valid and enforceable, the court should stay or dismiss the action to allow the arbitration to proceed." *Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 940 (9th Cir. 2009).

This is so "even though arbitration must take place beyond the jurisdiction of the court. And this is true, whether the arbitration is to be in the United States or in a foreign country." *DaPuzzo v. Globalvest Mgmt. Co., L.P.*, 263 F. Supp. 2d 714, 723 (S.D.N.Y. 2003) (quoting *Shanferoke Coal & Supply Co. v. Westchester Serv. Corp.*, 293 U.S. 449, 453 (1935)); *see also Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) ("9 U.S.C. section 3 gives a court authority, upon application by one of the parties, to grant

a stay pending arbitration" or to dismiss "when all claims are barred by an arbitration clause"); *Martin Marietta Aluminum, Inc. v. Gen. Elec. Co.*, 586 F.2d 143, 147-48 (9th Cir. 1978) (same); *see also PPG Indus., Inc. v. Pilkington plc*, 825 F. Supp. 1465, 1473 (D. Ariz. 1993) (staying case pursuant to Section 3 while arbitration proceeds in London).[7]

### B. BCL has the right to enforce the arbitration agreements.

There is no question that plaintiff's claims against BCL—which are identical to its claims against Ganymede—fall within and are subject to plaintiff's agreement to arbitrate. *See supra* at 6-10. Although BCL did not sign the arbitration agreements, it nevertheless has the right to enforce the agreements under long-standing principles of estoppel.

Enforcement of an arbitration agreement by a non-signatory under the FAA is governed by the law of the forum state. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009); *In re Henson*, 869 F.3d 1052, 1059-60 (9th Cir. 2017). Arizona law allows a non-signatory to enforce an arbitration clause against a signatory under principles of "alternative estoppel" either (1) "when the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided" or (2) "[w]hen each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement [and] the signatory's claims arise out of and relate directly to the written agreement." *Sun Valley Ranch 308 Ltd. P'ship ex rel. Englewood Props., Inc. v. Robson*, 231 Ariz. 287, 296-97, 294 P.3d 125, 134-35 (Ct. App. 2012) (quoting *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798 (8th Cir. 2005)); *see*

---

[7] Because BCL is not a signatory to the arbitration agreements, but rather is being sued as the parent of a signatory, the Court should dismiss or stay the claims against BCL pursuant to Section 3 of the FAA, rather than under Chapter 2. *Compare Yang v. Majestic Blue Fisheries, LLC*, 876 F.3d 996, 999 (9th Cir. 2017) (confining Chapter 2 to signatories), *with id.* at 1000-04 (recognizing application of Chapter 1 to non-signatories), *and Outokumpu Stainless USA, LLC v. Converteam SAS*, No. 17-10944, 2018 WL 4122807, at *6 (11th Cir. Aug. 30, 2018) ("the Convention requires that the arbitration agreement be signed by the parties before the Court," but "Chapter 1 does not expressly restrict arbitration to the specific parties to an agreement").

*also Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir.2009) (recognizing same two-part test). Both tests for estoppel are met here.

### 1.    Close relationship between signatory and non-signatory.

The relationship between Ganymede and BCL is "sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided." *Sun Valley Ranch*, 231 Ariz. at 296-97, 294 P.3d at 134-35 (quoting *CD Partners*, 424 F.3d at 798). The SAC includes more than 50 allegations against "Defendants," and makes no distinction between Ganymede and its parent, BCL. [*See* SAC ¶¶ 51-74, 80, 96-114] Plaintiff alleges that BCL and Ganymede are one and the same because BCL "exercised substantially total control over the management and activities of Ganymede during Ganymede's entire existence as a corporate legal entity. Ganymede had no separate mind, will, or existence of its own, but instead its sole purpose was to serve as a business conduit for [BCL] during its dealings with [plaintiff]." [*Id.* ¶ 80]

On these facts, plaintiff is estopped from resisting arbitration of its claims against BCL. In *Bonner v. Michigan Logistics Inc.*, 250 F. Supp. 3d 388 (D. Ariz. 2017), the court held that plaintiff could not avoid arbitration where it alleged that defendants—only one of which was a signatory to the arbitration agreement—had "common management," "centralized control of labor relations," "common ownership" and constituted "a single employer" and an "integrated enterprise." *Id.* at 397-99. The court in *Sun Valley* reached the same result, holding that plaintiff was estopped from avoiding arbitration against non-signatory defendants where the plaintiff alleged concerted misconduct. 231 Ariz. at 296-97, 294 P.2d at 134; *see also Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 373-74 (4th Cir. 2012) ("[w]ithout a doubt," non-signatory defendant may "compel a signatory to the clause to arbitrate the signatory's claims," where plaintiff asserted the same causes of action against each defendant and made identical allegations); *CD Partners*, 424 F.3d at 798-99 (compelling arbitration based of franchisee's claims against non-signatory principals of franchisor); *Astra Oil Co. v. Rover Navigation, Ltd.*, 344 F.3d 276, 279-81 (2d Cir. 2003)

(compelling arbitration based on non-signatory's "close corporate and operational relationship" with signatory).

Where "the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable"—here, the claims and factual allegations are identical—"the arbitration proceedings would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted" if the non-signatory "parent corporation was forced to try the case." *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, SA*, 863 F.2d 315, 320-21 (4th Cir. 1988) (quoting *Sam Reisfeld & Son Import Co. v. S.A. Eteco*, 530 F.2d 679, 681 (5th Cir. 1976)); *see also Airtourist Holdings LLC v. HNA Grp.*, No. C 17-04989 JSW, 2018 WL 3069444, at *3 (N.D. Cal. Mar. 27, 2018) (compelling arbitration where plaintiff alleged that non-signatory defendants "acted as agents" of the signatory-defendants); *Prograph Int'l Inc. v. Barhydt*, 928 F. Supp. 983, 990-91 (N.D. Cal. 1996) (compelling arbitration where "the allegations against the nonsignatory corporation do not differ substantially from those against its signatory affiliate").

### 2. Plaintiff's claims against BCL are "intertwined" with plaintiff's contracts with Ganymede.

The second test for estoppel is also met here. As detailed above (at 6-10) the gravamen of plaintiff's claims is that "Defendants" acted wrongfully in selling and assigning the FPAs and Note, which are inextricably bound together. Plaintiff's claims both "make[] reference to" and "presume[] the existence of the written agreement [and] the signatory's claims arise out of and relate directly to the written agreement." *Sun Valley Ranch*, 231 Ariz. at 296-97, 294 P.3d at 134-35. For example, plaintiff's second cause of action for breach of the covenant of fair dealing implied into the Note is alleged against both Ganymede and BCL and entirely depends on BCL being found to be effectively a party to the Note and the other contracts that include the arbitration agreements. Similarly, under plaintiff's third cause of action, it was Ganymede, not BCL, which marketed and then sold the Note. BCL is liable, if at all, only for Ganymede's actions.

On this basis alone BCL has the right to enforce the agreement to arbitrate this

dispute. "[I]t would be manifestly inequitable to permit" a signatory plaintiff to allege claims arising out of the contracts containing the arbitration agreement, "and at the same time deny that [the non-signatory] is a party to that agreement in order to avoid arbitration of claims clearly within the ambit of the arbitration clause." *Hughes Masonry Co. v. Greater Clark Cty. Sch. Bldg. Corp.*, 659 F.2d 836, 838-39 (7th Cir. 1981); *see also Escobal v. Celebration Cruise Operator, Inc.*, 482 F. App'x 475, 476 (11th Cir. 2012) (compelling arbitration where plaintiff's claims against non-signatory were "inextricably intertwined" with his claims against signatory); *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 97-98 (2d Cir. 1999) (signatory was estopped from avoiding arbitration where the issues the nonsignatory was seeking to resolve in arbitration were intertwined with the agreement).

Because BCL is entitled to enforce plaintiff's agreements to arbitrate, this Court "shall" dismiss or "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *see also Sparling*, 864 F.2d at 638 ("9 U.S.C. section 3 gives a court authority" to dismiss "when all claims are barred by an arbitration clause"). "Nothing bars [plaintiff] from voluntarily pursuing the arbitration procedure . . . by which he accepted to be bound," *Dapuzzo*, 263 F. Supp. 2d at 744, but plaintiff may not avoid arbitration through the subterfuge of alleging identical claims against Ganymede's non-signatory parent.

## III. ALTERNATIVELY, THE COURT SHOULD EXERCISE ITS DISCRETION UNDER SECTION 3 OF THE FAA TO STAY FURTHER PROCEEDINGS.

Alternatively, at a minimum, even if the Court were to conclude—contrary to precedent—that BCL cannot enforce the arbitration agreements (or that further proceedings would be required to determine whether plaintiff's alter ego theory renders BCL a party to the arbitration agreements), plaintiff's claims against BCL should nevertheless be stayed pursuant to Section 3 of the FAA until the arbitration with Ganymede has been completed.[8]

---

[8] Section 3 of the FAA is part of Chapter 1 and is also applicable in Chapter 2 matters—like the arbitration with Ganymede—pursuant to 9 U.S.C. § 208, because it is

Courts exercise their discretion to stay proceedings where resolution of the arbitrable claims may resolve the dispute or if simultaneous litigation in arbitration and court could yield inconsistent judgments. *See, e.g.*, *Newton v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985) (affirming stay of all proceedings, including non-arbitrable third party complaint, pending arbitration based on "[c]onsiderations of economy and efficiency"); *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1114-15 (C.D. Cal. 2002) (staying action, including non-arbitrable claims against non-signatory defendants, where "judicial economy and the desirability of avoiding possible inconsistent findings militate in favor of a stay"); *Harvey v. Joyce*, 199 F.3d 790, 795-96 (5th Cir. 2000) (staying claims against non-signatory where claims were based on same operative facts, and a lawsuit against the non-signatory could have a critical impact on the arbitration).

Here, a determination in arbitration that Ganymede acted properly under the FPAs and the Note will preclude plaintiff from raising those facts as a basis for its claims against BCL as Ganymede's alleged alter ego. In *Alghanim v. Alghanim*, 828 F. Supp. 2d 636 (S.D.N.Y. 2011), the court confronted a similar situation in a matter arising under the Convention and issued a partial stay, reasoning that "the judicial economy achieved in awaiting the resolution of issues in arbitration may prove considerable" because defendants could "defensively deploy any favorable arbitral determinations to collaterally estop plaintiff from re-litigating the same issues in this action." *Id.* at 664-65. The same result would follow in this case. *See Norton v. Phonejockey LLC*, No. 1 CA-CV 15-0186, 2016 WL 5939723, at *3 (Ariz. Ct. App. Oct. 13, 2016), *as amended* (Nov. 17, 2016) ("[Arizona courts] generally recognize arbitration decisions as valid and final on questions of fact and law."); *Gilbert v. Hartford-Comprehensive Emp. Benefit Serv. Co.*, No. 1 CA-CV 10-0292, 2011 WL 553285, at *2-3 (Ariz. Ct. App. Feb. 17, 2011) (applying defensive collateral estoppel to arbitrator's finding); *Roderick v. Mazzetti & Assocs., Inc.*, No. C 04-2436 MHP,

---

consistent "with Chapter 2 of the FAA [and] the Convention." *Apex Digital*, 155 F. Supp. 2d at 1179-80; *see also* 9 U.S.C. §§ 3, 208.

2005 WL 3797122, at *4 (N.D. Cal. Oct. 27, 2005) (recognizing that "[a]rbitration proceedings have res judicata or collateral estoppel effect" and precluding relitigation of claim decided in arbitration).

Because under all circumstances plaintiff is bound to arbitrate its claims against Ganymede, there necessarily would be a multiplicity of litigation and the possibility of inconsistent judgments if plaintiff could simultaneously litigate its claims against BCL. If Ganymede is exonerated in the arbitration, there will be no need for this Court to determine whether BCL is subject to arbitration or, if not, is somehow vicariously liable for Ganymede's actions. Therefore, if the Court does not dismiss or stay the claims against BCL pending arbitration of the claims against BCL—which is the correct result here under the FAA—a stay of those claims is mandated until the arbitration against Ganymede is completed.

## CONCLUSION

For the reasons stated, defendants request that the Court dismiss or stay plaintiff's claims against Ganymede and compel plaintiff to proceed in arbitration in London, England pursuant to the Arbitration Rules of the LCIA. With respect to plaintiff's claims against BCL, defendants request that the Court refer those claims to arbitration and dismiss or stay those claims pending completion of the arbitration. Alternatively, defendants request that the claims against BCL at the very least be stayed pending completion of the arbitration between plaintiff and Ganymede.

Dated: October 15, 2018                    **PERKINS COIE LLP**

By: s/ Shane R. Swindle
    Shane R. Swindle
    Barry G. Stratford
    2901 North Central Avenue, Suite 2000
    Phoenix, Arizona 85012-2788

*Attorneys for Defendants*

CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2018, I electronically transmitted the attached

documents to the Clerk's Office using the CM/ECF System for filing to the parties below.

Michael C. Manning
Jeffrey Goulder
Stefan Palys
James Camoriano
Stinson Leonard Street LLP
1850 North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4584

Attorneys for Plaintiff


                                            s/  Shawne Murphy
LEGAL141478070.