William J. Quinlan, State Bar No. 028679
**THE QUINLAN LAW FIRM, LLC**
233 S. Wacker Drive, 61st Floor
Chicago, Illinois 60606
Telephone: 312.629.6012
E-Mail: wjq@quinlanfirm.com

*Attorneys for Epicenter Loss Recovery, L.L.C.*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Epicenter Loss Recovery LLC, an Arizona Limited Liability Company,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>Burford Capital Ltd., and Ganymede Investments Ltd.,<br><br>　　　　Defendants. | No. 2:18-CV-03300-DJH<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>(Hon. Diane J. Humetewa) |

Plaintiff Epicenter Loss Recovery LLC ("ELR"), by and through its counsel, respectfully states as follows as its Response in Opposition to Motion to Dismiss.

**I.     The Court Should Deny The Motion To Dismiss Because The Arbitration Has Not Fully Concluded.**

Epicenter respectfully submits that Defendants' motion to dismiss is premature as the arbitration has not yet concluded. Specifically, supplemental proceedings are pending before the LCIA tribunal related to an anti-suit injunction --- requested by Defendants --- and a determination

of costs to be awarded to Defendants based on the Partial Award. Epicenter submitted a response to the LCIA addressing the remaining issues. A copy of that Response is attached hereto as Exhibit A. Thus, the arbitration does not meet the "has been had" standard that would support dismissal.

### II. The Court Should Deny The Motion To Dismiss Because Epicenter Has Requested That The LCIA Tribunal Void The Arbitration Based on Undisclosed Conflicts And Bias.

On August 23, 2023, Epicenter submitted to the Tribunal a request to lift all confidentiality provisions and terminate and void the arbitration due to undisclosed conflicts and bias. A copy of the August 23, 2023 submission is attached hereto as Exhibit B. Further, Bruce Gray, the sole member of Epicenter has requested the opportunity to apprise this Court of specific instances that he believes demonstrate the bias and conflict of interest that supports his request to void the arbitration. Counsel here was not counsel in the arbitration and therefore, attached as Exhibit C is correspondence from Mr. Gray related to proceedings before the LCIA that he believes support the request to void the arbitration. Epicenter no longer has counsel representing its interest before the LCIA.

Pending the Tribunal's ruling on Epicenter's request to void the arbitration, any dismissal would be premature. Epicenter has raised a challenge to the whether the arbitration should be voided. Courts have recognized that a stay may appropriate if the arbitration proceedings are somehow legally deficient, so that the matter may return to the Court for review. *See Cherry v. Wertheim Schroder & Co., Inc.*, .868 F. Supp. 830, 836 (D. S.Car. 1994). Thus, if the arbitration is deemed void or invalid, a stay is necessary in order to preserve Epicenter's rights before the Court.

### III. The Authority Cited By Defendants Is Inapposite.

Finally, the authority that Burford relies on here to support the motion to dismiss is inapposite. Specifically, in *Tillman v. Tillman*, 825 F.3d 1069, 1075 (9th Cir. 2016), the Ninth Circuit held that when an arbitration was terminated before the merits were reached or an award issued --- because of the party's failure to pay arbitration fees --- allowing the case to proceed before the district court was the only way for the claims to be adjudicated. In

1  *Tillman*, the parties agreed to arbitration rules that provided for termination of arbitration
2  in the event of nonpayment without resolution or judgment.  Here, in light of the pending
3  supplemental issues and the pending request to void the arbitration and lift the
4  confidentiality orders, the arbitration does not meet the "has been had" standard that would
5  support dismissal.

Dated:  September 5, 2023      THE QUINLAN LAW FIRM, LLC

/s/ William J. Quinlan
William J. Quinlan
233 S. Wacker Drive, 61st Floor
Chicago, Illinois 60606
docketing@quinlanfirm.com
312-883-5500
*Attorneys for Plaintiff*

**Exhibit A**

**CLAIMANT'S RESPONSE TO RESPONDENT'S 31 JULY 2023 PROPOSED ADDITIONS TO THE ANTI-SUIT INJUNCTION LANGUAGE IN THE AWARD:**

Claimant ELR is adamantly opposed to the language Respondent Burford Capital seeks to add to the anti-suit injunction. Moreover, ELR is opposed to any anti-suit injunction language in the Award that would in any way limit or stifle, either implicitly or otherwise, ELR's rights in US Court or elsewhere, or that make self-serving declarations by Burford about its liability or lack thereof – not because ELR has the slightest desire to extend one day longer than necessary the nearly 14-year nightmare of the Gray Development Group affiliates' fatal association with Burford and its founders, but because ELR believes the LCIA was not a true neutral forum for this arbitration due to Burford's powerful one-of-a-kind role within the international arbitration industry and the elite London legal establishment, as well as Burford's undisclosed but highly probable business and/or personal relationships with the LCIA Court and Board members (see Exhibit A), its Users' Councils, and its owners.

Very serious questions need to be asked and brought to the attention of Judge Humetewa in US District Court in Arizona about LCIA's neutrality, conflicts, and bias – including unconscious bias – whenever Burford is a direct party to international arbitration at the LCIA in London. The US Court that ordered this arbitration must be completely unfettered to do whatever it deems appropriate based on a closer examination of these questions. Because of those legitimate questions, the Tribunal should not oblige the Respondent by attempting to unfairly nail ELR's coffin shut by cynically using the Tribunal to cover Burford's tracks with the intent of keeping Burford's corrupt business practices and questionable ethics out of public view and scrutiny.

Burford is simply unlike any other party to LCIA arbitration because Burford is the world's largest and most powerful funder of international arbitration – the LCIA's one and only business – as well as the largest and most influential capital provider to the top 200 law firms and barristers in London as well as globally. Burford's October 2009 IPO announcement states, "the Company intends to focus on commercial disputes in the United States and on international arbitration matters." It is no coincidence that Burford has been one of the leading proponents and cheerleaders of London arbitration generally, and of the LCIA in particular, as other venues around the world have steadily eroded London's dominant position as the preferred seat of international arbitration, as evidenced by Burford's March

2019 roundtable "with leading London lawyers and arbitrators . . . to discuss the city's continued evolution as an arbitral center" [excerpted from Burford's website].

According to Burford's website, it funded $928 million "on behalf of companies and law firms in 2022" alone and has a current investment portfolio of $5.8 billion with "more than 1,000 commercial matters", which appears to have grown by leaps and bounds annually at least in part thanks to Burford's major early win with ELR's predecessors in 2010 just nine months after its IPO.  How many of those 1,000-plus current matters are now in arbitration at the LCIA or soon will be?  How could we possibly know?  All or nearly all of Burford's money ultimately flows to the world's preeminent law firms and London barristers – at least some partners of which directly or indirectly control and/or influence the LCIA. Collectively, Burford may very well be, either directly or indirectly, the single largest source of revenue for elite law firms and barristers in London and may also be the largest and most indispensable source of revenue, either directly or indirectly, for the LCIA itself.

Burford's website boasts that it has funded cases with 91% of the world's 100 largest law firms, all or nearly all of which are headquartered or have offices in London.  During the first quarter of 2023, of the 51 members of the LCIA Court and Board (setting aside the dozen or so prominent London barristers on the Court and/or Board) at least twelve are partners or counsel at the world's 100 largest law firms and four others are partners at the top 200 firms, according to law.com 2022 global rankings by revenue.  At least ten others on the Court and/or Board are prior partners or counsel at the world's 200 largest law firms. Suffice it to say that the elite law firms and barristers that Burford does business with have at least some involvements in the leadership and control of the LCIA.  It is statistically impossible for Burford to <u>not</u> be doing business either directly or indirectly with at least some of the law firms represented on the LCIA Court and/or Board, not to mention potentially barristers on the Court and/or Board, and the 2,200 members on the LCIA Users' Councils, whose names are not available to the public – but whose name may be withheld upon request by the member from the LCIA Member Directory to remain anonymous.  Is anyone at Burford or its counsel in this case a member and, if so, in what capacity? Transparency and disclosures by the LCIA are virtually nil, so we have no way of knowing.

Burford Capital is indeed the ultimate forum-shopper.  Even before its IPO in 2009, which occurred just weeks before the first FPA with ELR's predecessors, it is ELR's understanding that the three US lawyers that founded the company predetermined that all future Burford

2

investment contracts would mandate arbitration before the LCIA, and only in London, and always applying English law.  Burford clearly did so in the belief that it would provide it a distinct if not insurmountable advantage over those with whom Burford would do business, many of whom are of course in financial difficulty, particularly with small players like the Gray Development Group affiliates in a far-off backwater like Arizona.

ELR believes the three Burford founders preselected the LCIA, not just for laws more favorable for its future litigation and international arbitration funding business in England than in the US (as Burford was likely entitled to do), but also because they likely already knew several members of the LCIA Court and Board (through their many Harvard, Georgetown and Yale university connections and prior professional relationships as prominent lawyers, for example) and recognized that over time, if Burford was successful, it would have more and more business relationships with other prominent lawyers that control and influence the LCIA – every one of whom Burford hoped to do business with. Burford has succeeded and that has now come to pass.

ELR has good reason to believe that Burford preselected the LCIA over exponentially more convenient AAA-ICDR, for example, due to the LCIA being controlled predominantly by the same relatively small number of London barristers and partners of elite law firm with whom Burford planned to provide billions in capital, but also due to LCIA's relatively tiny annual caseload that would give Burford outsize leverage, influence, and clout as it funded more and more international arbitration and funneled ever more high-value cases to the LCIA.  It didn't take a genius to recognize in 2009 that Burford's and LCIA's business and financial interests would be increasingly aligned and become interdependent over time as Burford grew and prospered.  ELR also has reason to believe that Burford's designation of the LCIA as its preferred if not mandatory international arbitration forum was and remains essential and integral to Burford's business model and business plan that requires keeping its questionable business practices and ethics out of public view and hidden from stockholders and regulators.

Private company secrecy, strict confidentiality, the lack of transparency, and the absence of disclosures at the LCIA is enormously problematic and troubling in this unique case because of what Burford is today and what it does with whom that is altogether unlike any other party to LCIA arbitration.  None of this could happen with an actual UK or US court where most records are publicly available, everyone at the court is a government employee, and no one

is a current partner of a major law firm or practicing barrister with a direct, outside financial interest or ties to Burford.  While the LCIA's leadership and control structure may work fine with every international arbitration participant other than Burford, it is now altogether disqualifying for the LCIA to arbitrate disputes involving Burford itself.  Burford has been so successful and become so dominant and powerful in the legal world that it may no longer be suitable for any private international arbitration – at least not in London where much of Burford's money ends up.

The financial fortunes of Buford Capital and many of the largest law firms and most prominent barristers in London, not to mention the LCIA itself and the larger London legal community, are linked to one degree or another – the only question is how much.  It is impossible for an outsider like ELR to know because the LCIA made no disclosure of conflicts or potential conflicts in this case, and the LCIA and Burford both have confidentiality rules that make it impossible to know who is doing business with whom, and how many and how often Burford has cases before the LCIA, either directly or indirectly, and what percentage of LCIA revenue is derived from the high-value cases funded and fed to it by Burford – but we know it's not zero because of the Sysco case that apparently went to trial at the LCIA earlier this year according to published media reports around the same time as this case.  ELR has no way of knowing how many other Burford-funded cases have been tried by the LCIA but it is likely substantial.  Has an LCIA award ever gone against Burford's interests?  How could we possibly know?

ELR believes Burford purposely uses LCIA confidentiality rules (intended one assumes to legitimately protect one-off arbitration participants not in the London legal community or litigation and international arbitration funding business) to make it impossible for anyone to know how deep Burford's relationship is with the LCIA and those that control it, and to prevent anyone from connecting the dots of Burford's corrupt business practices and questionable ethics.  As a result, it is nearly impossible for unsuspecting companies contemplating doing business with Burford – not to mention Burford stockholders and potential stockholders many of whom are public pensions – to know who they might be getting in bed with, what to expect, and to be able to evaluate the true risks of investing or doing business with Burford.

It came as a surprise to ELR earlier this year when it learned that the LCIA is in fact a privately owned company.  While a non-profit, the LCIA still needs to compete for business

with much larger, fast-growing competitors, and its leadership has every motivation to protect its future, while members of the LCIA Court, Board, and Users' Councils clearly have an incentive to earn a profit for themselves and their firms.  According to information believed to be reliable found on the Internet, six of the world's largest international arbitration organizations include: AAA-ICDR, CIETAC, HKIAC, ICC, LCIA and SIAC.  Of the nearly 15,200 cases administered by the six in 2021, only 322 or 2.1% were administered by the LCIA.  ELR is concerned that the LCIA and those that control it cannot afford to lose its status as Burford's preferred if not exclusive international arbitration forum or lose Burford as a major long-term feeder of high-value cases.  Since peaking in 2020, LCIA caseload through 2022 declined 28% while other top arbitration forums outside the UK have continued to grow as the leading centers of international arbitration continue to shift to the US and Asia.  The LCIA may therefore be highly motivated to downplay or ignore conflicts and bias with respect to Burford, particularly after losing significant business following Russia's invasion of Ukraine in 2022.  ELR is justifiably concerned that the LCIA, its owners and members simply cannot risk alienating increasingly powerful Burford, or in any way jeopardize the hundreds of millions of pounds Burford pumps into the elite London legal establishment annually.

Respectfully, it is simply impossible for the LCIA to be a true neutral, unconflicted and unbiased forum when Burford or an affiliate of Burford is a direct party to private international arbitration.  An anti-suit injunction intended to prohibit ELR from finding a neutral, unconflicted and unbiased court, and self-serving declarations by Burford about its lack of accountability or liability are simply unfair to ELR and completely inappropriate due to the unique facts and very special circumstances present here.

# EXHIBIT A

**THE LCIA BOARD, Q1 2023:**

- Chairman: **Christopher Style KC**, One Essex Court – UK Set Rank #11 *(previously with Linklaters – World Rank #15)* [chambermate of Tribunal panelist Dame Elizabeth Gloster]

- Director General: **Professor Dr Jaconijn van Haersolte-van Hof**, HaersolteHof *(previously with Freshfields Bruckhaus Deringer – World Rank #17)*

- Deputy Director General: **Jamie Harrison**, "practising international arbitration lawyer"

- President LCIA Court: **Paula Hodges KC** Partner and Head of Global Arbitration Practice, Herbert Smith Freehills – World Rank #33

- **James Castello** Partner, King & Spalding – World Rank #28

- **Kate Cervantes-Knox** Partner, DLA Piper – World Rank #3 *(previously with Linklaters – World Rank #15)*

- **Judith Gill KC**, 20 Essex Street – UK Set Rank #37 *(previously with Allen & Overy – World Rank #11)*

- **David Goldberg** Partner, White & Case – World Rank #7

- **Philip Haberman**, Haberman Ilett LLP since 2013 *(accountant; expert witness)*

- **Richard Hill,** Shell *(previously partner with what is now Norton Rose Fulbright – World Rank #19)*

- **Duncan Matthews KC** Legal 500 Tier 1, Top 20 London Bar - Commercial Litigation Co-Head, 20 Essex Street – UK Set Rank #37

- **Constantine Partasides KC**, Partner, Three Crowns

- **Sherina Petit** Partner, Norton Rose Fulbright – World Rank #19

- **Dr Wolfgang Peter**, merits consultant and expert witness in complex valuation

- **Nigal Rawding KC**, 20 Essex Street – UK Set Rank #37 *(previously with Freshfields Bruckhaus Deringer – World Rank #17; co-author of <u>Freshfields Guide to Arbitration</u>)*

- **Natalie Reid** Partner, Debovoise & Plimpton – World Rank #43

    Source:  https://www.law.com/international-edition/2022/09/20/the-2022-global-200-ranked-by-revenue/
    Source:  https://tela.uk/2018/03/top-50-barristers-chambers-websites/
    Source:  https://legal500.com/c/london-bar/commercial-litigation/

1

**THE LCIA COURT, Q1 2023:**

- President: **Paula Hodges KC** Partner and Head of Global Arbitration, Herbert Smith Freehills – World Rank #33

- VP: **Raed Fathallah**, Partner, Bredin Prat

- VP: **Matthew Gearing KC**, independent *(previously with Fountain Court Chambers – UK Set Rank #2)*

- VP: **Christopher Lau SC**, independent, director at Wing Tai Holdings Ltd. *(Associate Member of 3 Verulam Buildings – UK Set Rank #12)*

- VP: **Karyl Nairn KC**, independent *(previously global co-head of International Arbitration, Skadden, Arps, Slate, Meager & Flom – World Rank #5)*

- VP: **Garbielle Nater-Bass**, Partner, Hoburger

- VP: **Professor Luca Radicati di Brozolo**, Arblit, Door Tenant Fountain Court Chambers – UK Set Rank #2

- VP: **Professor Dr Maxi Scherer** Special Counsel, Wilmer Hale – World Rank #45  [previously on faculty of Georgetown Centre of Transnational Legal Studies with Professor Jon Molot]

- **Ramunas Audzevicius**, Partner, Motieka & Audzevicius

- **Marie Berard** Partner, Clifford Chance – World Rank #9

- **Stavros Brekoulakis**, Associate Member, 3 Verulam Buildings – UK Rank Set #12

- **Kate Brown de Vajar** Partner, DLA Piper – World Rank #3  [alumnus of Harvard Law School with Jon Molot]

- **Dr Alfredo Jose Bullard Gonzalez**, Partner, Bullard Falla Ezcurra+

- **Utku Cosar**, independent, Arbitration Chambers *(previously with Cosar Avukatlik Burosu)*  [alumnus of Georgetown University Law Center where Jon Molot is a professor]

- **Anneliese Day KC** Legal 500 Tier 3, Top 100 London Bar - Commercial Litigation  Fountain Court Chambers – UK Set Rank #2

- **Anand Desai**, Partner, DSK Legal

- **Artem Doudko** Partner, Osborne Clarke – World Rank #121

- **Nicola Dunleavy**, Partner, Matheson

2

- **John Fellas**, Fellas Arbitration [alumnus of Harvard Law School with Jon Molot]

- **Steven Finizio** ⟦Partner, Wilmer Hale – World Rank #45⟧ [alumnus of Georgetown University where Jon Molot is a professor]

- **Agis Georgiades**, Partner, Christos Georgiades & Associates, Lincoln's Inn

- **Beatrice Hamza-Bassey**, Group General Counsel, Atlas Mara Ltd. *(previously with Hughes Hubbard & Reed – World Rank #176)*

- **James Hope**, Partner and Head of International Arbitration, Vinge *(previously with Simmons & Simmons – World Rank #92 – and Skadden, Arps, Slate, Meager & Flom – World Rank #5)*

- **David Joseph KC** ⟦Legal 500 Tier 3, Top 100 London Bar - Commercial Litigation⟧ Essex Court – UK Set Rank #6

- **Alvaro Lopez de Argumedo** ⟦Partner, Uria Menendez – World Rank #173⟧

- **Nania Owusu-Ankomah**, Partner, Bentsi-Enchill, Letsa & Ankomah

- **Ank Santens** ⟦Partner, White & Case – World Rank #7⟧

- **Kamal Shah** ⟦Partner, Stephenson Harwood – World Rank #187⟧

- **Shai Sharvit**, Of Counsel, Gornitzky & Co.

- **Mohamed Shelbaya**, Partner, Gaillard Banifatemi

- **Christopher Style KC**, LCIA Board Chairman, One Essex Court – UK Set Rank #11 *(previously with Linklaters – World Rank #15)* [chambermate of Tribunal panelist Dame Elizabeth Gloster]

- **May Tai** ⟦Partner, Herbert Smith Freehills – World Rank #33⟧

- **Sami Tannous**, independent *(previously with Freshfields Bruckhaus Deringer – World Rank #17)*

- **Professor Dr Jacomijn van Haersolte-van Hof**, LCIA Director General, HaersolteHof *(previously with Freshfields Bruckhaus Deringer – World Rank #17)*

- **Johanna Wirth** ⟦Partner, Hengeler Mueller – World Rank #162⟧

- **Robert Wisner**, Partner, McMillan

- **Byund-Chol Yoon** ⟦Partner, Kim & Chang – World Rank #55⟧

3

**THE LCIA COURT HONORARY VICE PRESIDENTS, Q1 2023:**

- **Professor Dr Karl-Heinz Bockstiegel**, independent arbitrator, past president of LCIA

- **Honourable L Yves Fortier CC OQ KC**, past LCIA Court president *(previously Partner with what is now Norton Rose Fullbright – World Rank #19)*

- **Judith Gill KC**, 20 Essex Street – UK Set Rank #37 *(previously Partner with Allen & Overy – World Rank #11)*

- **Professor Dr Gerold Herrmann**, past LCIA Court president

- **Professor Jan Paulsson**, University of Miami School of Law  [alumnus of Yale and Harvard with Jon Molot]

- **Professor William W Park**, Boston University [alumnus of Yale with Jon Molot]


Source:  https://www.law.com/international-edition/2022/09/20/the-2022-global-200-ranked-by-revenue/
Source:  https://tela.uk/2018/03/top-50-barristers-chambers-websites/
Source:  https://legal500.com/c/london-bar/commercial-litigation/

4

# Exhibit B

-----Original Message-----
From: Bruce Gray
Sent: Wednesday, August 23, 2023 5:27 PM
To: Tom Webster <webster@thwebster.com>; ZARD, Rebecca <Rebecca.Zard@freshfields.com>; 'egloster@oeclaw.co.uk' <egloster@oeclaw.co.uk>; 'yarnmallan@gmail.com' <yarnmallan@gmail.com>
Cc: VALNER, Olivia <olivia.valner@freshfields.com>; RUSSELL, Cameron <Cameron.RUSSELL@freshfields.com>; MARSDEN, Oliver (OJM) <oliver.marsden@freshfields.com>; Casework@lcia.org; 'teamd@oeclaw.co.uk' <teamd@oeclaw.co.uk>; 'AHodgson@oeclaw.co.uk' <AHodgson@oeclaw.co.uk>
Subject: RE: LCIA Arbitration No: 204619 - Epicenter Loss Recovery LLC v Ganymede Investments Limited; and Burford Capital Limited

Dear Members of the Tribunal:

Claimant Epicenter Loss Recovery LLC ("ELR") writes in response to the letter to the Tribunal dated 16 August 2023 by counsel for Respondent Burford/Ganymede ("Burford").

ELR has raised very serious and perfectly legitimate questions and concerns about the neutrality of the LCIA as a forum for this arbitration as well as conflicts and bias – concerns Burford is no doubt eager to dismiss out of hand for the obvious reason that there is an inconvenient truth to everything ELR stated in its responsive communication dated 7 August 2023. ELR brought those concerns to the Tribunal as soon as ELR's concerns came to light after conducting its own research to try to penetrate the inexplicable secrecy surrounding the unique relationship between Burford and the LCIA. While Burford protests and expresses its indignation to the valid and very significant concerns expressed by ELR, the Tribunal will note that Burford does nothing to refute ELR's central concerns based on the facts in ELR's 7 August response.

Burford is absolutely unique and extraordinary in the world of international arbitration. It therefore deserves far greater scrutiny when it is a direct party to international arbitration. As the world's largest funder of international arbitration – LCIA's sole mission and reason to exist – Burford is literally in a class of one. Burford is believed to mandate that all arbitration that Burford has any hand in, involving hundreds or thousands of cases, must be decided by one relatively tiny privately owned company in London, the LCIA, when Burford has so many options available that are much larger, cheaper, faster, and far more convenient. Why? If, as ELR believes, Burford is responsible for a very significant number of LCIA cases, it is perfectly reasonable and appropriate for anyone directly facing Burford in LCIA arbitration to ask these questions and challenge the neutrality of the LCIA given that it appears to be the only private forum that powerful and influential Burford will accept. This is especially important given that Burford deals in high-value claims and LCIA fees are based in part on claim size, meaning Burford may well be responsible for most of LCIA's annual revenue if not its very survival. It would be grossly unfair to ignore or dismiss ELR's perfectly valid questions and highly relevant concerns.

ELR's concerns and questions are relevant for two very simple reasons:  1) no disclosures of any kind were made by either the LCIA or Burford at the outset of this arbitration when there undoubtedly should have been a myriad of disclosures; and 2) both Burford and the LCIA operate under a cloak of complete secrecy that provides zero transparency to third parties involved in arbitration into what is a perfectly obvious relationship – secrecy and lack of transparency that would not be tolerated elsewhere.  That combined with what ELR experienced first-hand during and immediately after the trial and the claims made by Burford on its website gives rise to ELR's perfectly valid concerns and very serious allegations, to which neither ELR nor the Tribunal have received a single answer.

It is deeply troubling that the LCIA was not sufficiently self-aware or forthcoming about its one-of-a-kind relationship with the world's largest international arbitration funder to decline this case outright in 2020, or at least make comprehensive disclosures to alert all parties to its special relationship with one party so everyone else involved could make an informed decision about moving forward with a very expensive process that could take years.  With a Board and Court comprised entirely of top-tier lawyers and legal scholars, it is inconceivable that it occurred to no one at LCIA that conflicts or at the very least the appearance of conflicts existed given the secretive and highly unusual nature of the relationship between the LCIA and Burford.  Having failed to do so, that duty and burden fell solely to Burford to make the appropriate and timely disclosures and divulge the full extent of its history and involvement with the LCIA, its owners and those that control it.  Burford obviously knew those conflicts existed but remained silent, and continues to remain silent, because it hoped the issue would never come to light and it would get away with having an existential threat against it decided at a private, friendly venue where the deck was already stacked heavily against its opponent.

The Tribunal must once and for all lift the cloak of secrecy that has protected both Burford and the LCIA and shielded them from scrutiny by releasing all parties involved in this arbitration from confidentiality rules that do nothing to help ELR but allow Burford to continue operating in the shadows at enormous expense of everyone else.

It is ELR's strong contention that this arbitration is fatally tainted and unrecoverable due to the absence of proper and timely disclosures of any kind by either the LCIA or Burford, the complete lack of transparency and total secrecy if not actual collusion by the LCIA and Burford that made it literally impossible for ELR to have made an informed decision in 2019 and 2020 about moving ahead with this arbitration that wasted four and a half years and exhausted all of ELR's resources and that of its ultimate owner.  ELR contends that the Tribunal must immediately terminate this arbitration and declare it void, after first ordering the LCIA and Burford to refund ELR's costs with interest totaling roughly $5,000,000.  This is a self-inflicted wound by Burford.  It had the benefit of all history and facts yet made a conscious decision not to shed the slightest light on its secretive but very special relationship and obvious conflicts after the LCIA remained silent.

In the absence of the Tribunal's immediate termination of this arbitration and declaration that it is void, as is entirely correct and appropriate, ELR specifically requests that the Tribunal clearly state in any award that ELR strongly believes that both LCIA and the Respondent utterly failed to make proper, necessary and timely

disclosures and the LCIA was not a neutral, unconflicted or unbiased forum for this arbitration due to total secrecy and the lack of transparency surrounding LCIA's history and unique relationship with Burford, the world's largest international arbitration funder, raising very serious but unanswered questions about this entire arbitration and thereby fatally tainting its outcome.

In the even the arbitration is not terminated and voided there should be no anti-suit injunction of any kind for this reason.

ELR also contends that there must be an immediate, thorough, and fully independent investigation into the entirety of Burford's history and unique relationship with the LCIA, its owners and those that control the LCIA, conducted by highly qualified neutral parties from outside the UK for the LCIA to preserve its integrity and legitimacy.  All information relevant to their collective case history and those relationships should finally be made public and immediately available to anyone in arbitration or potential arbitration at LCIA that in any way involves Burford, as well as to regulators, Burford investors, and those contemplating doing business with Burford in the future.

Thank you.

Best regards,

Bruce Gray for Claimant Epicenter Loss Recovery LLC

-----Original Message-----
From: Tom Webster <webster@thwebster.com>
Sent: Wednesday, August 16, 2023 2:45 PM
To: ZARD, Rebecca <Rebecca.Zard@freshfields.com>; 'egloster@oeclaw.co.uk' <egloster@oeclaw.co.uk>; 'yarnmallan@gmail.com' <yarnmallan@gmail.com>
Cc: Bruce Gray <bgray@grayus.com>; VALNER, Olivia <olivia.valner@freshfields.com>; RUSSELL, Cameron <Cameron.RUSSELL@freshfields.com>; MARSDEN, Oliver (OJM) <oliver.marsden@freshfields.com>; Casework@lcia.org; 'teamd@oeclaw.co.uk' <teamd@oeclaw.co.uk>; 'AHodgson@oeclaw.co.uk' <AHodgson@oeclaw.co.uk>
Subject: Re: LCIA Arbitration No: 204619 - Epicenter Loss Recovery LLC v Ganymede Investments Limited; and Burford Capital Limited

Dear Colleagues:

On behalf of the Tribunal, I acknowledge receipt of the Respondents'
reply submissions on costs and on the anti-suit injunction.

Best regards.

Tom Webster

--
Thomas Webster
19 rue du Docteur Blanche
Paris 75016
France

[www.thwebster.com](www.thwebster.com)

Tel. 33 (0) 785 33 1974
     33 (0) 971 44 8546

**Exhibit C**

**From:** Bruce Gray <bgray@grayus.com>
**Date:** Monday, September 4, 2023 at 3:22 PM
**To:** William J. Quinlan <wjq@quinlanfirm.com>, Lisa Quinlan <lquinlan@quinlanfirm.com>
**Subject:** Opposition Response

Hi Bill and Lisa,

It's extremely important in my view that we make Judge Humetewa fully aware of the insanity of what happened during the LCIA trial in January and how that completely misaligns with the tribunal's inexplicable April ruling in Burford's favor.  It can only be explained by bias, undisclosed conflicts, and the tribunal's desire to help the LCIA's secret benefactor walk away scot-free from a rock-solid $600 million existential threat.  Burford admitted during the trial that they actually <u>ordered</u> the destruction of thousands of internal emails having anything to do with ELR, ELR's predecessors, or anything having to do with the tumultuous decade-long relationship <u>despite</u> being repeatedly advised by ELR's predecessors as early as 2015 that it intended to sue Burford for its wrongdoing as soon as it had the means to do so.  Burford knew exactly what was coming because we previewed the claim in the 2016-2018 bankruptcy case.  But rather than assume Burford destroyed the most crucial evidence to save their skin – as I think any unbiased, unconflicted, fair-minded trier of fact would do – the tribunal dismissed it with a shrug and then found in Burford's favor because they said I didn't have enough corroborative evidence of Burford's wrongdoing!  Truly incredible.  Let's remind ourselves that Burford is a group of elite lawyers and the world's largest investor in commercial litigation and international arbitration.  Let's remember too that Jon Molot, the Burford founder I dealt with the entire time, graduated near the top of his class from Harvard Law and is a law professor at Georgetown.  No entity or group of people on the planet understand evidence preservation and illegal spoliation better than this group – they deal with this stuff every day.  They clearly knew in advance that no LCIA tribunal would hold them to account or dare to bite the hand that feeds it and half the elite law firms in London where those that control the LCIA are partners.  There's more evidence of the tribunal's bias but that's the obvious place to start.  The selective way they applied AZ law is another.

I also think we need to recognize that Burford wants the case dismissed in Arizona now before anything is finalized in London so they can immediately refile in NYC to have any LCIA award summarily confirmed without any questions asked and make sure Burford's secret relationship with LCIA never faces scrutiny.  If that happens it's game-over.  I pray to god Judge Humetewa sees what's happening and allows this to go a jury here.

Bruce