**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Epicenter Loss Recovery LLC, | No. CV-18-03300-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Burford Capital Limited, et al., | |
| Defendants. | |

This matter concerns the parties' arbitration proceedings at the London Court of International Arbitration ("LCIA"). In accordance with the Court's January 14, 2019, Order (Doc. 48), Defendants Burford Capital Ltd. and Ganymede Investments Ltd. ("Defendants") filed a Motion to Dismiss on August 21, 2023, on the grounds that all of Plaintiff's claims have been arbitrated. (Doc. 88). The Motion is contested by Plaintiff.[1] The Court must decide whether it has jurisdiction over Plaintiff's disputes arising out of the LCIA arbitration proceedings. The Court finds that neither the LCIA Arbitration Rules (the "LCIA Rules") nor the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), provides it with authority to review or modify foreign arbitration awards. This action should be dismissed.

/ / /

/ / /

---

[1] The matter is fully briefed. Plaintiff filed a Response (Doc. 89) and Defendants filed a Reply (Doc. 90).

I.   **Background**[2]

   A.   **The Parties' Arbitration Provision**

On April 22, 2013, Defendants and Plaintiff Epicenter Loss Recovery LLC's ("Plaintiff") entered into a Subordination and Intercreditor Agreement (Doc. 1-8), which included the following arbitration provision:

> Any dispute, controversy or claim arising out of or in connection with this Agreement shall (to the exclusion of any other forum) be referred to and finally resolved by arbitration under the Arbitration Rules of The London Court of International Arbitration ("LCIA"). Subordinated Creditor and Company each expressly agrees that its agreement to arbitrate, and any resulting award, falls under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, and section 202, and Chapter 2, of the Federal Arbitration Act, and agrees that this Agreement has a reasonable relation to a foreign state. . . . The seat, or legal place, of arbitration shall be London, England, and all proceedings shall occur there.

(*Id*. at 43). Plaintiff filed suit against Defendants for breach of good faith, tortious interference, and alter ego notwithstanding the arbitration provision. (*See generally* Doc. 1).[3]

In its January 14, 2019, Order the Court made the following findings on the arbitration provision: (1) the LCIA Rules govern the parties' arbitration matters, (Doc. 48 at 8); (2) the FAA incorporates the Convention on the Recognition and Enforcement of the Foreign Arbitral Awards, 9 U.S.C. § 201 *et seq*. (the "Convention on Foreign Arbitral Awards" or "Convention"), and provides the Court with the authority to enforce arbitration outside of this district,[4]   (*id*. at 7–8 n.7); and (3) Defendants are

---

[2] The Court incorporates the background section of its January 14, 2019, Order (Doc. 48 at 2–3).

[3] Plaintiff initially filled this suit in Maricopa County Superior Court and Defendants subsequently removed it. (Doc. 5 at 11)

[4] The Court gave the following background on the Convention:

> [The parties'] arbitration provision provides that it 'falls under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards' (codified as 9 U.S.C. § 201 et seq.) also known as the

entitled to enforce the arbitration provision (*id*. at 9–11). The Court accordingly compelled the parties to arbitrate Plaintiff's claims and stayed the action under § 3 of the FAA "until such arbitration has been had." (*Id*. at 11 quoting 9 U.S.C. § 3). The parties commenced arbitration proceedings at the LCIA, which concluded on February 1, 2023. (Doc. 81).

### B. The Arbitration Proceedings at the LCIA

On April 24, 2023, the LCIA issued a "Final Partial Award" (Doc. 88-1) that dismissed all of Plaintiff's claims. (*Id*. at ¶ 715). The Final Partial Award stated that a supplemental award would be forthcoming on account of Defendants' entitlement "to an anti-suit injunction with respect to the claims subject to this arbitration[.]" (*Id*. at ¶¶ 701–02). On June 1, 2023, the LCIA issued a memorandum of corrections to the First Partial Award. (Doc. 93-1 at ¶ 1).

In a series of status reports submitted to the Court, the parties disagreed as to whether or not the case should be dismissed in light of the awards issued by the LCIA. (Docs. 82; 83; 84; 86). The Court therefore ordered the parties to file a stipulation to dismiss or, alternatively, permitted Defendants to file a motion to dismiss. (Doc. 85).

On August 21, 2023, Defendants filed their Motion to Dismiss, arguing this matter should be terminated because the LCIA's Final Partial Award resolved Plaintiff's claims, and any other supplemental awards would not impact the outcome of litigation because they related entirely to Defendants' counterclaims. (*See generally* Doc. 88).

On August 23, 2023, Plaintiff requested the LCIA to "lift all confidentiality provisions and terminate and void the arbitration due to undisclosed conflicts and bias."

---

New York Arbitration Convention. *Innospec Ltd. v. Ethyl Corp.*, 2014 WL 5460413, at *3 (E.D. Va. Oct. 27, 2014). The New York Arbitration Convention applies to agreements that fall under § 2 of the FAA in which at least one party is foreign and grants jurisdiction to the district courts for actions or proceedings involving such agreements. *see* 9 U.S.C. §§ 202, 203. A district court "may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." *Id*. § 206. Over 150 nations have signed on to the Convention, including the United States and the United Kingdom.

(Doc. 48 at 7–8 n.7).

- 3 -

1   (Doc. 89 at 2). Plaintiff sent its request to the LCIA via email (*id*. at 15–17),

2   On December 11, 2023, the LCIA issued its Final Award (Doc. 93-1).[5] The Final
3   Award incorporated the terms of the Final Partial Award and subsequent correcting
4   memorandum (Doc. 93-1 at ¶ 1), ordered an anti-suit injunction against Plaintiff
5   (*id*. at ¶ 143), and ordered Plaintiff to pay certain compensation and costs to Defendants
6   (*id* at ¶¶ 144–147).

## II.     Defendants' Motion to Dismiss (Doc. 88)

The parties disagree whether this matter should be dismissed in light of the status of the arbitration proceedings. Plaintiff contends his pending request that the LCIA "void the arbitration due to undisclosed conflicts and bias" prevents the arbitration proceedings from concluding, and the Court should continue to stay proceedings in this matter until the LCIA rules on his request. (Doc. 89 at 2). Plaintiff further maintains the Court should avoid dismissing this matter to preserve Plaintiff's rights "in the event the arbitration is deemed void or invalid." (*Id*.)[6]

Defendants argue the Court should dismiss this action because the LCIA has issued its Final Award resolving Plaintiff's claims and so arbitration "has been had" under § 3 of the FAA. (Doc. 88 at 3 quoting 9 U.S.C. § 3). As to Plaintiff's efforts to void the arbitration proceedings, Defendants represent that Plaintiff must submit any such challenge to the English courts. (Doc. 90 at 2). Defendants contend this Court does not have jurisdiction to hear such a challenge because it is required to defer to the arbitral tribunal under the Convention on Foreign Arbitral Awards. (Doc. 90 at 3).

So, the issue before this Court is whether Plaintiff's challenge to the validity of the LCIA awards establishes this Court's continued jurisdiction over this matter. The Court

---

[5] Defendants alerted the Court of the Final Award through their Response to Plaintiff's Status Report (Doc. 93).

[6] When Plaintiff filed its Response to Defendants' Motion to Dismiss on September 5, 2023, the LCIA had yet to issue its outstanding supplemental award. (*See generally* Doc. 89). Plaintiff thus argued the outstanding award prevented the arbitration from meeting the "has been had" standard that would support dismissal. (Doc. 89 at 2). However, the LCIA has since issued its Final Award on December 11, 2023. (*See generally* Doc. 95-1). The Court therefore finds Plaintiff's argument is moot in this respect.

- 4 -

agrees with Defendants that this matter should be dismissed because neither the LCIA Rules nor the FAA provides the Court with the necessary jurisdiction over disputes arising out of the international arbitration proceedings.

### A. The Court Cannot Review Arbitration Awards by the LCIA under the LCIA Rules

First, the Court agrees with Defendants that any challenge by Plaintiff to the arbitration proceedings must be submitted to the English courts. The LCIA Rules do not provide the parties with any right to appeal the decisions made throughout the course of arbitration to this Court. LCIA Rule 26.8 states the following:

> Every [LCIA] award (including reasons for such award) shall be final and binding on the parties. The parties undertake to carry out any award immediately and without any delay (subject only to Article 27); and the parties also waive irrevocably their right to any form of appeal, review or recourse to any state court or other legal authority, insofar as such waiver shall not be prohibited under any applicable law.

LCIA Rule 26.8. Similarly, LCIA Rule 29.2 reiterates that "the parties shall be taken to have waived any right of appeal or review in respect of any determination and decision of the LCIA Court to any state court or other legal authority." LCIA Rule 29.2.

Should Plaintiff wish to "void the arbitration due to undisclosed conflicts and bias" (Doc. 89 at 2), Plaintiff must follow the appropriate procedures under the LCIA Rules.[7] So, Plaintiff cannot seek recourse from this Court because the Court does not have jurisdiction to entertain any such challenges to or appeals of the LCIA's awards. *See* LCIA Rules 26.8; 29.2.

### B. The Court Cannot Review Arbitration Awards by the LCIA under the FAA

Furthermore, the FAA no longer provides the Court with jurisdiction over this matter. The parties' arbitration proceedings are governed by the FAA provisions that

---

[7] *See e.g.* Article 10 Revocation and Challenges of the LCIA Rules *and* Article 27 "Correction of Award(s) and Additional Award(s)" of the LCIA Rules.

- 5 -

incorporate the Convention on Foreign Arbitral Awards. (*See* Docs. 1-8 at 43; 48 at 7–8 n.7). The parties do not provide, and the Court is unaware of, any case in the Ninth Circuit with a similar fact pattern. However, the Court finds Second Circuit caselaw insightful:

> Under the [] Convention, the country in which an arbitral award is rendered is said to have primary jurisdiction over the arbitration award. The state with primary jurisdiction is free to set aside or modify an award in accordance with its domestic arbitral law and its full panoply of express and implied grounds for relief. All other signatory states are secondary jurisdictions, and these states may decide only whether to enforce the arbitral award. In essence, the Convention allows for a single-step process for reducing a foreign arbitral award to a domestic judgment. This process occurs in a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 40 F.4th 56, 747 (2d Cir. 2022) (internal quotations and citations omitted). As applied to the present matter, the United Kingdom has primary jurisdiction over the LCIA awards, and this district may only decide whether to enforce the LCIA awards under its secondary jurisdiction. Other circuit courts follow similar principles, and this Court will follow suit. *See Gulf Petro Trading Co., Inc. v. Nigerian Nat. Petroleum Corp.*, 512 F.3d 742 (5th Cir. 2008) ("[A] United States court sitting in secondary jurisdiction lacks subject matter jurisdiction over claims seeking to vacate, set aside, or modify a foreign arbitral award."); *see also Corporacion AIC, SA v. Hidroelectrica Santa Rita S.A.*, 66 F.4th 876 (11th Cir. 2023) (explaining that, under the Convention, "[c]ourts in secondary jurisdictions can only decide whether to recognize and enforce an arbitral award").

This conclusion is also consistent with the text of the FAA. The FAA provides district courts with the authority to *enforce* international arbitrations arising under the Convention—that is, district courts may (a) "direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States", 9 U.S.C. § 206; and (b) confirm foreign arbitral awards against any party to the arbitration, *id.* § 207. Unlike domestic arbitral awards, the FAA

is silent as to whether district courts have the authority to modify or otherwise vacate a foreign arbitral award. *Cf. id*. §§ 10–12.

Plaintiff cites to *Cherry v. Wertheim Schroder & Co., Inc.* to argue that this Court should continue to stay this matter "if the arbitration proceedings are somehow legally deficient, so that the matter may return to the Court for review." (Doc. 89 at 2 citing 868 F. Supp. 830, 836 (D.S.C. 1994)). But *Cherry* concerns domestic arbitration proceedings and does not arise under the FAA provisions that incorporate the Convention. Apart from compelling arbitration outside of the United States, the only other mode of jurisdiction provided by the FAA is for the Court to enforce foreign arbitral awards. *See* 9 U.S.C. §§ 206–07. And Defendants have made clear that they do not seek enforcement of the LCIA awards at this time. (Doc. 90 at 3). Therefore, the Court does not have jurisdiction to hear any other disputes arising out of the parties' arbitration proceedings at the LCIA.

Accordingly,

**IT IS ORDERED** that Defendants Burford Capital Ltd. and Ganymede Investments Ltd.'s Motion to Dismiss (Doc. 88) is **GRANTED**. The Clerk of Court is kindly directed to **dismiss with prejudice** all of Plaintiff Epicenter Loss Recovery LLC's claims against Defendants and terminate this matter.

Dated this 9th day of January, 2024.

Honorable Diane J. Humetewa
United States District Judge